**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**Holding a Criminal Term**
**Grand Jury Sworn in on October 31, 2003**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.**          **(RMU)** |
| | : | |
| | : | **GRAND JURY ORIGINAL** |
| | : | |
| **v.** | : | **VIOLATIONS:** |
| | : | |
| | : | |
| | : | |
| **SIMON P. KARERI and** | : | |
| | : | |
| **NDEYE NENE FALL KARERI,** | : | |
| | : | **18 U.S.C. § 371 (Conspiracy);** |
| | : | **18 U.S.C. § 1344 (Bank Fraud);** |
| | : | **18 U.S.C. §§ 1343, 1346 (Wire Fraud and** |
| | : | **Deprivation of Honest Services);** |
| **Defendants.** | : | **18 U.S.C. § 1957 (Money Laundering);** |
| | : | **18 U.S.C. § 2 (Causing an Act to be Done,** |
| | : | **Aiding and Abetting);** |
| | : | **22 D.C. Code §§ 3221(a), 3222(a)(1)** |
| | : | **(Fraud in the First Degree);** |
| | : | **26 U.S.C. § 7201 (Attempt to Evade** |
| | : | **and Defeat Tax);** |
| | : | **18 U.S.C. § 2232(b) (Impairment of** |
| | : | ***In Rem* Jurisdiction);** |
| | : | **18 U.S.C. §§ 982(a)(2)(A), 982(b)(1)** |
| | : | **(Criminal Forfeiture)** |
| _____ | : | |

<u>**INDICTMENT**</u>

The Grand Jury charges that:

<u>**COUNT ONE - CONSPIRACY**</u>

At all times material to this Indictment:

INTRODUCTION

Riggs Bank

1.   Riggs Bank N.A. ("Riggs Bank" or "Riggs") was a financial institution organized, licensed and doing business under the laws of the United States with a principal place of business in Washington, D.C.  Riggs Bank was a financial institution whose deposits were insured by the Federal Deposit Insurance Corporation.

2.   Riggs Bank operated a business division within the bank known as International Banking. Customers of International Banking were principally foreign embassies, foreign governments, and high net worth foreign governments officials and their families.

The Parties

3. Defendant SIMON P. KARERI ("KARERI") was a Senior Vice President in Riggs Bank's International Banking division in Washington, D.C.  KARERI's work focused on countries in the African/Caribbean regions.  As part of his job duties, KARERI managed Riggs Bank's business relationships with certain Riggs foreign governments and foreign customers from certain African countries.  In his capacity as Senior Vice President, defendant KARERI had broad authority over the bank accounts he managed on behalf of Riggs including, but not limited to, the power to approve wire transfers of funds from customer accounts.  As a senior officer of Riggs Bank, KARERI occupied a fiduciary position of trust, confidence and obligation at Riggs, and in performing his duties for Riggs, KARERI owed Riggs the fiduciary duties of fidelity, honesty, loyalty, and care.

4.   Defendant NDEYE NENE FALL KARERI ("FALL") was Simon P. Kareri's wife and resided with KARERI at a residence in Silver Spring, Maryland.

Riggs Bank's Code of Ethics and Prevailing Banking Industry Regulations

5.    Riggs Bank prohibited conflicts of interest and self-dealing by bank employees. Specifically, the Riggs Bank Code of Ethics:

- expressly directed bank personnel to "avoid representing the Bank in any transaction, whether with a person or business organization in which a staff member or any member of his or her immediate family has a material connection or a substantial financial interest";

- strictly prohibited bank employees from borrowing money from bank customers;

- stated that "Staff members and their immediate families are not to solicit or accept any personal benefits from any customer of the Bank . . . .";

- "No staff member shall engage in any transaction with the understanding that all or part of the anticipated payment is to be used for any unlawful or improper purpose. No secret or non-recorded fund may be established or maintained for any purpose."

6.    Riggs Bank required all of its employees, including defendant KARERI, to certify annually in writing that they had read the Riggs Code of Ethics and were in compliance with it.

7.    Riggs Bank was periodically examined by federal bank examiners to assure that it was operated in a safe and sound manner and in conformity with applicable laws and regulations. The Office of the Comptroller of the Currency ("OCC") had primary supervisory authority over Riggs Bank and defendant KARERI in his capacity as senior vice president of Riggs Bank.

8.    Title 12, United States Code, section 1818(e)(1), among other things, expressly prohibits bank officers such as defendant KARERI from receiving any financial gain as a result of engaging in conduct which violates the bank officer's fiduciary duty of loyalty to the bank.

-3-

9.  Upon discovering misconduct by bank officers, the OCC has, under Title 12 of the United States Code, extensive administrative enforcement authority over banks and bank officers, including the imposition of civil monetary penalties of up to $1,000,000 per day, removals and prohibitions from banking, and restitution actions.

<u>Equatorial Guinea and Benin accounts at Riggs Bank</u>

10.  Equatorial Guinea ("EG") is a country approximately the size of Maryland on the west coast of Africa.  In 1995, billions of dollars of oil reserves were discovered within EG territorial waters, resulting in a significant influx of capital from businesses in the United States and elsewhere.

11.  From in or about 1996 to in or about 2004, defendant KARERI, in his capacity as Senior Vice President of Riggs, opened and maintained numerous bank accounts for the government of EG. KARERI also opened and maintained bank accounts for various EG senior government officials, and their family members including the EG President, Teodoro Obiang Nguema Mbsago ("Obiang") and Obiang's son, Teodoro Nguema Obiang ("Nguema").

12.  Benin is a country approximately the size of Maine on the west coast of Africa. Defendant KARERI, in his capacity as Senior Vice President of Riggs, opened and maintained a bank account for the embassy of Benin.  KARERI was in charge of Riggs Bank's business relationship with Benin.

13.  H.S., a resident of Virginia, had experience as a construction contractor and, from time to time, performed construction services for the Embassy of Benin and other embassies and embassy officials.

<u>Jadini Holdings</u>

14. On or about May 9, 2001, defendant KARERI established an offshore shell corporation in the British Virgin Islands known as Jadini Holdings Ltd. ("Jadini") for the purpose of concealing his personal business transactions with Riggs customers. The business address for Jadini listed in the incorporation documents was defendants KARERI's and FALL's home address in Silver Spring, Maryland.

15. On or about July 3, 2001, defendant FALL opened bank account numbers xxxxxx5279 and xxxxx5260 at SunTrust Bank in the name of Jadini ("the Jadini accounts"). FALL was listed as President of Jadini.

<u>THE CONSPIRACY</u>

16. From between in or about January, 2000, until in or about May, 2004, in the District of Columbia and elsewhere, defendants KARERI and FALL did knowingly combine, conspire and agree with each other and with others to commit the following offenses against the United States:

a. to defraud Riggs Bank by devising a scheme and artifice to defraud, and to obtain moneys and funds owned by and under the custody and control of Riggs, a federally insured financial institution, by means of false and fraudulent pretenses, representations, and promises, that is, defendants KARERI and FALL wilfully concealed the material fact from Riggs Bank that KARERI was engaging in prohibited personal business transactions with Riggs Bank customers, in violation of Title 18, United States Code, Section 1344 (bank fraud); and

b. to knowingly devise a scheme and artifice to defraud and to deprive Riggs Bank of defendant KARERI's honest services as a Riggs Bank officer and employee and to obtain money by means of false and fraudulent pretenses and representations, and for the purpose of executing such

scheme use interstate wire communications in violation of Title 18, United States Code, Sections 1343 (wire fraud) and 1346 (deprivation of honest services).

A Goal of the Conspiracy

17. A goal of the conspiracy was for defendants KARERI and FALL to unlawfully enrich themselves by KARERI engaging in prohibited personal business transactions with Riggs Bank customers in which KARERI had a financial interest without the knowledge or consent of Riggs Bank.

Manner and Means of the Conspiracy

18. In order to achieve a goal of the conspiracy, defendants KARERI and FALL used the following manners and means, among others:

a. The Embassy of Benin and other embassies maintained bank accounts at Riggs Bank that defendant KARERI supervised. Pursuant to defendant KARERI's recommendation, and without Riggs Bank's knowledge or consent, the Embassy of Benin and other embassies entered into business relationships with H.S. to perform remodeling services on their properties.

b. In or about January, 2000, Defendant KARERI instructed H.S. to provide defendant KARERI with an initial estimate for the work on the Benin Embassy. In or about February, 2000, H.S. provided defendant KARERI with an initial estimate of approximately $186,000 for a major renovation of the Benin Embassy in Washington, D.C.

c. In or about February, 2000, KARERI instructed H.S. to inflate the final estimate H.S. submitted to Benin to $410,000, of which KARERI demanded that H.S. return $224,000 to KARERI.

d. The Benin Embassy issued checks from their Riggs Bank accounts made payable to H.S. for the full inflated price – accounts defendant KARERI managed on behalf of Riggs.

e. H.S. delivered the portion of the proceeds that defendant KARERI demanded to KARERI at KARERI's office at Riggs Bank in Washington, D.C. As defendant KARERI well knew, his participation in these transactions was a direct violation of KARERI's fiduciary duty of loyalty to Riggs Bank and exposed Riggs to risk of loss and harm.

f. On or about May 9, 2001, defendants KARERI and FALL established Jadini through Trident Trust Services in Atlanta, Georgia. Defendant KARERI registered Jadini in the British Virgin Islands. Defendant FALL was listed as President of Jadini in order to conceal defendant KARERI's financial interest in Jadini.

g. On or about July 3, 2001, FALL opened two bank accounts at SunTrust Bank in the name of Jadini.

h. Between in or about July, 2001, and in or about March, 2002, from his office at Riggs Bank in Washington, D.C., defendant KARERI caused the transfer of approximately $1,096,677.78 of monies from Riggs Bank accounts owned and controlled by the government of Equatorial Guinea to SunTrust Bank Jadini accounts owned by defendants KARERI and FALL.

i. Defendants KARERI and FALL established and used Jadini to wilfully conceal from Riggs Bank defendant KARERI's prohibited business activities with Riggs customers over whose accounts KARERI had supervision. As defendant KARERI well knew, his participation in these transactions was a direct violation of KARERI's fiduciary duty of loyalty to Riggs Bank and exposed Riggs to risk of loss and harm.

j.  Defendant KARERI enlisted the assistance of third persons to conceal monies that KARERI obtained from Riggs customer accounts that were under his supervision.  For example, on or about November 28, 2003, defendant KARERI gave B.B. a check made payable to B.B. in the amount of $140,000 drawn off the Riggs account of Nguema, the son of the President of EG. Defendant KARERI supervised this account in his capacity as Senior Vice President of Riggs.

k.  On or about November 30, 2003, B.B., acting at defendant KARERI's direction, deposited Riggs check #301 into B.B.'s bank account and wrote a check made payable to defendant FALL in the amount of $139,000.

l.  On or about December 8, 2003, defendant FALL deposited this $139,000 into her bank account at Chevy Chase Bank.

m.  Defendants KARERI and FALL solicited B.B.'s involvement and used FALL's maiden name and bank account to wilfully conceal from Riggs Bank defendant KARERI's prohibited business activities with Riggs customers over whose accounts KARERI had supervision.

n.  In an effort to conceal defendant KARERI's prohibited activities from Riggs Bank and banking regulators, defendant KARERI made false statements to Riggs Bank.

o.  In an effort to conceal defendant KARERI's activities from Riggs Bank and the Internal Revenue Service of the United States Department of Treasury (IRS), defendants KARERI and FALL failed to report any of these proceeds as income on their federal tax returns.

p.  As defendant KARERI well knew, KARERI's receipt of funds from Riggs Bank customer accounts without Riggs's knowledge or consent was a direct violation of KARERI's fiduciary duty of loyalty to Riggs Bank and exposed Riggs to potential regulatory sanctions and other risk of loss and harm.

<u>Overt Acts</u>

19.  Within the District of Columbia and elsewhere, in furtherance of the above-described conspiracy and in order to carry out the objects thereof, defendants KARERI and FALL and others known and unknown to the Grand Jury, committed the following overt acts, among others:

(1)  On or about April 8, 2000, defendant KARERI received Crestar Bank check number 1512 from H.S. in the amount of $110,000.

(2)  On or about May 22, 2000, defendant KARERI received Crestar Bank check number 1564 from H.S. in the amount of $55,000.

(3)  On or about September 6, 2000, defendant KARERI received Crestar Bank check number 1633 from H.S. in the amount of $49,000.

(4)  On or about September 6, 2000, defendant KARERI received Crestar Bank check number 1634 from H.S. in the amount of $10,000.

(5)  On or about July 5, 2001, defendant KARERI caused the wire transfer of $700,000 from Riggs account #xxxxx4642 held by the government of EG to FALL's Jadini account.

(6)  On or about July 5, 2001, defendant KARERI caused the wire transfer of $329,926 from Riggs account #xxxxx4642 held by the government of EG to FALL's Jadini account.

(7)  On or about July 22, 2002, defendant FALL purchased an $800,000 certificate of deposit at SunTrust Bank (account #xxxxx9776) using proceeds from FALL's Jadini account #xxxxx5279.

(8)  On or about March 20, 2002, defendant KARERI caused the wire transfer of $66,751.78 from Riggs account #xxxxx4642 held by the government of EG to FALL's Jadini account #xxxxx5279.

(9)  On or about November 28, 2003, defendants KARERI and FALL delivered to B.B. Riggs Bank check # 301 drawn from Nguema's Riggs Bank account #xxxxx3-450 in the amount of $140,000 and made payable to B.B..

(10)  On or about November 28, 2003, B.B. deposited Riggs Bank check # 301 into Bank of America bank account #xxxxxx1995, an account held by B.B.

(11)  On or about November 30, 2003, B.B. issued check # 756 from Bank of America account #xxxxxx1995 in the amount of $139,000 made payable to defendant FALL.

(12)  On or about December 8, 2003, defendant FALL deposited check # 756 from B.B.'s Bank of America account in the amount of $139,000 into account # xxxxxx251-5 at Chevy Chase Bank, an account owned by defendant FALL.

(13)  On or about December 15, 2003, defendant FALL transferred $130,000 from Chevy Chase Bank account # xxxxx251-5 to purchase a certificate of deposit, account # xxxxxx084-4, at Chevy Chase Bank.

(14)  On or about January 13, 2004, defendant FALL withdrew $139,000 from Chevy Chase Bank account # xxxxxx251-5 and obtained a cashier's check for $139,000 made payable to B.B.

(15)  On or about January 13, 2004, defendant KARERI transmitted by facsimile a letter to Riggs Bank Executive Vice President David Caruso in which KARERI falsely stated that the $140,000 check from Nguema was a loan to B.B. for B.B.'s purchase of Section 8 housing.

(16)  On or about January 13, 2004, defendant FALL transmitted by facsimile a letter to Riggs Bank Executive Vice President David Caruso in which FALL falsely stated that the $140,000 check from Nguema was a loan to B.B. for B.B.'s purchase of Section 8 housing.

**(Conspiracy, Aiding and Abetting, Causing an Act to be Done,**

**in violation of 18 United States Code, Sections 371 and 2)**

## COUNTS TWO THROUGH SIX – BANK FRAUD

1.  Paragraphs one through fifteen and seventeen through nineteen of Count One of this Indictment are realleged and incorporated by reference as if set out in full.

2.  Riggs Bank was a financial institution whose deposits were insured by the Federal Deposit Insurance Corporation.

3.  From between in or about January, 2000, until in or about March, 2004, in a continuing course of conduct, in the District of Columbia and elsewhere, defendants KARERI and FALL, for the purpose of executing and attempting to execute the aforementioned scheme and artifice, did defraud a financial institution, that is, Riggs Bank, and obtain money owned by and under the custody and control of Riggs Bank, by means of false and fraudulent pretenses, representations and promises, that is, defendants KARERI and FALL wilfully concealed the material fact from Riggs Bank that KARERI was engaging in prohibited personal business transactions with Riggs Bank customers.

4.  On or about the dates set forth below, corresponding to the enumerated counts, in the District of Columbia and elsewhere, defendants KARERI and FALL, for the purpose of executing and attempting to execute the aforementioned scheme and artifice, committed the following acts:

| COUNT | DATE | ACT IN EXECUTION OF THE SCHEME AND ARTIFICE |
|---|---|---|
| TWO | 9/6/00 | Defendant KARERI solicited and received a payment of $49,000 from H.S. |
| THREE | 7/5/01 | Defendant KARERI caused the wire transfer of $700,000 from Riggs account # xxxxx4642 held by the government of EG to defendant FALL's Jadini account |
| FOUR | 7/5/01 | Defendant KARERI caused the wire transfer of $329,926 from Riggs account # xxxxx4642 held by the government of EG to FALL's Jadini account |
| FIVE | 3/20/02 | Defendant KARERI caused the wire transfer of $66,751.78 from Riggs account # xxxxx4642 held by the government of EG to FALL's Jadini account |

| SIX | 11/28/03 | Defendants KARERI and FALL delivered to B.B. Riggs Bank check # 301 drawn from Teodoro Nguema Obiang's Riggs Bank account # xxxxx3-450 in the amount of $140,000 |
|---|---|---|

**(Bank Fraud, Causing an Act to be Done, Aiding and Abetting,
in violation of Title 18, United States Code, Sections 1344 and 2)**

## COUNTS SEVEN THROUGH TWELVE –
## WIRE FRAUD AND DEPRIVATION OF HONEST SERVICES

1.  Paragraphs one through fifteen and seventeen through nineteen of Count One of this Indictment are realleged and incorporated by reference as if set out in full.

2.  On or about the dates set forth below, defendants KARERI and FALL, in the District of Columbia and elsewhere, for the purpose of executing the above-described scheme and artifice to defraud and deprive, knowingly transmitted and caused to be transmitted by means of wire communication in interstate commerce, the following writings, signals and sounds:

| COUNT | DATE | WIRE COMMUNICATION | FROM | TO |
|---|---|---|---|---|
| SEVEN | 7/5/01 | Wire transfer of $329,926 | EG government Riggs Bank account # xxxxx4642, Washington, D.C. | Defendant FALL's SunTrust Jadini account # xxxxx5260, Virginia |
| EIGHT | 7/5/01 | Wire transfer of $700,000 | EG government Riggs Bank account # xxxx4642, Washington, D.C. | Defendant FALL's SunTrust Jadini account # xxxx5279, Virginia |
| NINE | 3/20/02 | Wire transfer of $66,751.78 | EG government Riggs Bank account # xxxxx4642, Washington, D.C. | Defendant FALL's SunTrust Jadini account # xxxxx5279, Virginia |
| TEN | 1/13/04 | Facsimile letter | Defendant KARERI, Silver Spring, Maryland | David Caruso, Riggs Bank, Washington, D.C. |
| ELEVEN | 1/13/04 | Facsimile letter | Defendant FALL, Silver Spring, Maryland | David Caruso, Riggs Bank, Washington, D.C. |

| TWELVE | 1/13/04 | Facsimile letter | B.B., Maryland | David Caruso, Riggs Bank, Washington, D.C. |

**(Wire Fraud, Deprivation of Honest Services, Causing an Act to be Done, Aiding and Abetting, in violation of Title 18, United States Code, Sections 1343, 1346 and 2)**

## COUNTS THIRTEEN THROUGH EIGHTEEN – MONEY LAUNDERING

1.    Paragraphs one through fifteen and seventeen through nineteen of Count One of this Indictment are realleged and incorporated by reference as if set out in full.

2.   On or about the dates set forth below, in the District of Columbia, defendants KARERI and FALL, knowingly engaged and attempted to engage in the monetary transactions set forth below by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is bank fraud:

| COUNT | DATE | TRANSACTION | AMOUNT |
|---|---|---|---|
| THIRTEEN | 7/5/01 | Defendant KARERI's deposit of funds into SunTrust Jadini account # xxxxx5260 | $329,926 |
| FOURTEEN | 7/5/01 | Defendant KARERI's deposit of funds into SunTrust Jadini account # xxxx5279 | $700,000 |
| FIFTEEN | 3/20/02 | Defendant KARERI's deposit of funds into SunTrust Jadini account # xxxx5279 | $66,751.78 |
| SIXTEEN | 12/8/03 | Defendant FALL's deposit of check # 756 to Chevy Chase Bank account # xxxxx251-5 | $139,000 |
| SEVENTEEN | 12/15/03 | Defendant FALL's transfer of money from Chevy Chase Bank account # xxxxxx251-5 to Chevy Chase certificate of deposit # xxxxx084-4 | $130,000 |
| EIGHTEEN | 1/13/04 | Defendant FALL's withdrawal from Chevy Chase Bank account # xxxxxx251-5 | $139,000 |

**(Money Laundering, Aiding and Abetting, Causing an Act to be Done, in violation of 18 United States Code, Sections 1957 and 2)**

## COUNT NINETEEN - FRAUD IN THE FIRST DEGREE

1.  Paragraphs one through fifteen and seventeen through nineteen of Count One of this Indictment are realleged and incorporated by reference as if set out in full.

2.  From between on or about April, 2000, until in or about March, 2004, in a continuing course of conduct, in the District of Columbia and elsewhere, defendants KARERI and FALL engaged in a scheme and systematic course of conduct with intent to defraud and to obtain property with a value of more than $250 that was under the possession, custody, or control of Riggs Bank by means of false or fraudulent pretenses, representations, and promises.

**(Fraud in the First Degree, Aiding and Abetting, in violation of Title 22, District of Columbia Code, Sections 3221(a) and 3222(a)(1) and Section 1805)**

## COUNT TWENTY – CONSPIRACY

1.  Paragraphs one through fifteen and 18(a) through 18(i) of Count One of this Indictment are realleged and incorporated by reference as if set out in full.

2.  Defendants KARERI and FALL filed joint income tax returns with the Internal Revenue Service for the tax years 2000, 2001, and 2002.  Defendants KARERI and FALL signed and filed their 2000 income tax return under penalties of perjury.  Defendants KARERI and FALL electronically filed their 2001 and 2002 income tax returns using an individual PIN number to electronically submit the returns under penalties of perjury.

### THE CONSPIRACY

3.  From between in or about January, 2000, until in or about April, 2003, in the District of Columbia and elsewhere, defendants KARERI and FALL knowingly combined, conspired and agreed with each other to:

-14-

a.  defraud the United States and an agency thereof, the IRS; and

b.  impede, impair, obstruct, and defeat the lawful governmental functions of the IRS in the ascertainment, assessment, computation, and collection of revenue, that is, income taxes, in violation of 26 U.S.C. §§ 7201 and 7206(1).

### A Goal of the Conspiracy

4.  A goal of the conspiracy was for defendants KARERI and FALL to unlawfully enrich themselves by concealing taxable income from the IRS.

### Manner and Means of the Conspiracy

5.  In order to achieve a goal of the conspiracy, defendants KARERI and FALL used the following manners and means, among others:

a.  From between in or about January, 2000, and in or about September, 2000, defendant KARERI solicited monies from H.S. as a payment for referring construction business to H.S..

b.  H.S. paid KARERI a total of $224,000 in 2000, which KARERI deposited into his account at Crestar bank, and which should have been reported as income on KARERI's 2000 federal income tax return.

c.  On or about May 9, 2001, defendants KARERI and FALL established Jadini through Trident Trust Services in Atlanta, Georgia.  Defendant KARERI registered Jadini in the British Virgin Islands.  Defendant FALL was President of Jadini.

d.  On or about July 3, 2001, defendant FALL opened the Jadini accounts.  FALL was listed as President of Jadini.

e.  Between in or about July, 2001, and in or about March, 2002, defendant KARERI caused the transfer of approximately $1,096,677.78 of monies from Riggs Bank accounts owned and

-15-

controlled by the government of EG to SunTrust Bank Jadini accounts owned by defendants FALL and KARERI.  This was income that KARERI and FALL should have reported on their 2001 and 2002 federal income tax returns.

f.  Defendants KARERI and FALL established and used Jadini to wilfully conceal income from the IRS.

g.  During the period between 2000 and 2003, defendants KARERI and FALL would and did unlawfully, wilfully and knowingly attempt to evade a substantial part of the income taxes due and owing.  To this end, defendants understated their income on their joint income tax returns for the calendar years 2000, 2001, and 2002 by an aggregate amount of approximately $1,320,677.78.

h.  During the period between 2001 and 2003, defendants KARERI and FALL would and did unlawfully, wilfully and knowingly make and subscribe individual federal tax returns, which returns contained and were verified by written declarations that they were made under penalties of perjury, and which the defendants did not believe to be true and correct as to every material matter.

Overt Acts

6.  Within the District of Columbia and elsewhere, in furtherance of the above-described conspiracy and in order to carry out the objects thereof, defendants KARERI and FALL and others known and unknown to the Grand Jury, committed the following overt acts, among others:

(1)  On or about April 8, 2000, defendant KARERI received Crestar Bank check number 1512 from H.S. in the amount of $110,000.

(2)  On or about May 22, 2000, defendant KARERI received Crestar Bank check number 1564 from H.S. in the amount of $55,000.

(3)  On or about September 6, 2000, defendant KARERI received Crestar Bank check number 1633 from H.S. in the amount of $49,000.

(4)   On or about September 6, 2000, defendant KARERI received Crestar Bank check number 1634 from H.S. in the amount of $10,000.

(5) On or about April 8, 2001, defendants KARERI and FALL signed and filed with the IRS their 2000 joint individual income tax return, Form 1040.

(6)  On or about July 5, 2001, defendant KARERI caused the wire transfer of $700,000 from Riggs account #xxxxx4642 held by the government of EG to FALL's Jadini account.

(7) On or about July 5, 2001, defendant KARERI caused the wire transfer of $329,926 from Riggs account #xxxxx4642 held by the government of EG to FALL's Jadini account.

(8) On or about April 15, 2002, defendants KARERI and FALL electronically filed with the IRS their 2001 joint individual income tax return, Form 1040.

(9)  On or about March 20, 2002, defendant KARERI caused the wire transfer of $66,751.78 from Riggs account #xxxxx4642 held by the government of EG to FALL's Jadini account #xxxxx5279.

(10) On or about April 15, 2003, defendants KARERI and FALL electronically filed with the IRS their 2002 joint individual income tax return, Form 1040.

**(Conspiracy, Aiding and Abetting, Causing an Act to be Done,
in violation of 18 United States Code, Sections 371 and 2)**

## COUNT TWENTY-ONE – TAX EVASION

1.  Paragraphs one through four, twelve, thirteen, and 18(a) through 18(e) of Count One of this Indictment are realleged and incorporated by reference as if set out in full.

-17-

2. Between on or about September 6, 2000, and on or about April 15, 2001, in the District of Columbia, defendant KARERI, a resident of Silver Spring, Maryland, willfully attempted to evade and defeat a large part of the income tax due and owing by him to the United States of America for the calendar year 2000, by receiving Crestar Bank check number 1633 from H.S. in the amount of $49,000, for the purpose of concealing additional unreported taxable income received by KARERI during the calendar year 2000, on which unreported taxable income, as he then and there well knew and believed, there was due and owing to the United States of America a substantial additional tax.

**(Attempt to Evade or Defeat Tax, Causing an Act to be Done, in violation of Title 26, United States Code, Section 7201 and Title 18, United States Code, Section 2)**

## COUNT TWENTY-TWO – TAX EVASION

1. Paragraphs one through four, ten, eleven, fourteen, fifteen and 18(f) through 18(i) of Count One of this Indictment are realleged and incorporated by reference as if set out in full.

2. Between on or about July 5, 2001, and on or about April 15, 2002, in the District of Columbia, defendant KARERI, a resident of Silver Spring, Maryland, willfully attempted to evade and defeat a large part of the income tax due and owing by him to the United States of America for the calendar year 2001, by causing the wire transfer of $700,000 from Riggs account #xxxxx4642 held by the government of EG to FALL's Jadini account, for the purpose of concealing additional unreported taxable income received by KARERI during the calendar year 2001, on which unreported taxable income, as he then and there well knew and believed, there was due and owing to the United States of America a substantial additional tax.

**(Attempt to Evade or Defeat Tax, Causing an Act to be Done, in violation of Title 26, United States Code, Section 7201 and Title 18, United States Code, Section 2)**

-18-

## COUNT TWENTY-THREE – TAX EVASION

1.  Paragraphs one through four, ten, eleven, fourteen, fifteen and 18(f) through 18(i) of Count One of this Indictment are realleged and incorporated by reference as if set out in full.

2.  Between on or about March 20, 2002, and on or about April 15, 2003, in the District of Columbia, defendant SIMON P. KARERI, a resident of Silver Spring, Maryland, did willfully attempt to evade and defeat a large part of the income tax due and owing by him to the United States of America for the calendar year 2002, by

causing the wire transfer of $66,751.78 from Riggs account #xxxxx4642 held by the government of EG to FALL's Jadini account, for the purpose of concealing additional unreported taxable income received by KARERI during the calendar year 2002, on which unreported taxable income, as he then and there well knew and believed, there was due and owing to the United States of America a substantial additional tax.

**(Attempt to Evade or Defeat Tax, Causing an Act to be Done, in violation of
Title 26, United States Code, Section 7201 and Title 18, United States Code, Section 2)**

## COUNT TWENTY-FOUR – IMPAIRING
## FORFEITURE *IN REM* JURISDICTION

1.  On or about July 9, 2001, defendants KARERI and FALL purchased a parcel of land located at 11310 South Glen Road, Potomac, Maryland, for a purchase price of $575,000 (the "Defendant Property").

2.  On September 2, 2004, the United States filed a civil forfeiture complaint *in rem* against the Defendant Property in the United States District Court for the District of Columbia, Civil Action Number 04-1525 (RMU).

3.  The United States District Court for the District of Columbia issued a warrant of arrest *in rem* against the Defendant Property on September 29, 2004, and the warrant was served out of the District of Columbia on the Defendant Property on September 29, 2004.

4.  Defendants KARERI and FALL were put on notice that the United States had filed a civil forfeiture action against the Defendant Property.  On or about October 15, 2004, both defendants KARERI and FALL filed separate, verified "Statement[s] of Interest" in the United States Court for the District of Columbia, Civil Action 04-1525, in which each defendant indicated that he or she was "the co-owner of the property which is the subject of this forfeiture action."

5.  On or about January 10, 2005, defendants KARERI and FALL, through their counsel, jointly moved to have the civil forfeiture case filed against the Defendant Property (Civil Action 04-1525) stayed pending the outcome of a criminal investigation into their activities, of which they were then aware.

6.  On or about May 6, 2005, defendants KARERI and FALL sold the Defendant Property for $1,075,000 while the forfeiture case remained pending, but stayed.

7.  On or about May 6, 2005, defendants KARERI and FALL requested a check for the proceeds of the sale of the property and left the closing with a check made payable to defendants KARERI and FALL in the amount of $999,315.62.  Defendants KARERI and FALL negotiated the check and, immediately thereafter, transferred by wire proceeds from the sale of the Defendant Property outside the jurisdiction of the United States, into a foreign bank account that defendant FALL opened for the purpose of that transfer.

8.  On or about May 6, 2005, and in a course of conduct continuing thereafter, in the District of Columbia and elsewhere, defendants KARERI and FALL, knowing and having received notice

that the Defendant Property was the subject of a lawful seizure proceeding in the United States

District Court for the District of Columbia, and in order to prevent and impair the authorized seizing

and securing of Defendant Property by the United States, sold Defendant Property to a third party

and transferred the proceeds of that sale outside the jurisdiction of the United States.

**(Taking Action for the Purpose of Impairing or Defeating a Court's In Rem Jurisdiction
Over Property, in violation of Title 18, United States Code, Section 2232(b))**

## COUNTS TWENTY-FIVE THROUGH TWENTY-SEVEN – MONEY LAUNDERING

1.    Paragraphs one through three of Counts Two through Six of this indictment, and

paragraphs one through eight of Count Twenty-four of this indictment, are realleged and

incorporated by reference as if set out in full.

2.    Paragraphs 18(a) through 18(e) of this indictment, are realleged and incorporated by

reference as if set out in full.

3.    On or about the dates set forth below, defendants KARERI and FALL knowingly engaged

and attempted to engage in the monetary transactions set forth below by, through, or to a financial

institution, affecting interstate or foreign commerce, in criminally derived property of a value greater

than $10,000, such property having been derived from a specified unlawful activity, that is bank

fraud:

| COUNT | DATE | TRANSACTION | AMOUNT |
|---|---|---|---|
| TWENTY-FIVE | 5/6/05 | Defendants KARERI's and FALL's deposit of funds into Provident Bank | $999,315.62 |
| TWENTY-SIX | 5/6/05 | Defendants KARERI's and FALL's wire transfer of funds from Universal Title Company to CitiBank | $999,315.62 |
| TWENTY-SEVEN | 5/9/05 | Defendants KARERI's and FALL's transfer of funds from CitiBank account xxxxxxxx to Banque Generale du Luxembourg account #xxx-xxx084-4 | $950,000 |

-21-

**(Money Laundering, Aiding and Abetting, Causing an Act to be Done,
in violation of 18 United States Code, Sections 1957 and 2)**

## FORFEITURE ALLEGATION UNDER 28 U.S.C. § 2461(c) and 18 U.S.C. § 981(a)(1)(C)

1.  The violations alleged in Counts One through Twelve of this Indictment are realleged and incorporated by reference herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C), incorporating by reference Title 18, United States Code, Section 1956(c)(7), which further incorporates by reference Title 18, United States Code, Section 1961(1).

2.  As a result of the offenses alleged in Counts One through Twelve of this Indictment, defendants KARERI and FALL shall forfeit to the United States any property constituting, or derived from, proceeds traceable to a violation of conspiracy to commit bank fraud and wire fraud, in violation of Title 18, United States Code, Sections 371, 1344, and 1343; bank fraud, in violation of Title 18, United States Code, Section 1344; and/or wire fraud, in violation of Title 18, United States Code, Section 1343, including, but not limited to, the following:

    (a)    <u>Proceeds from the sale of real property</u>

        Any and all proceeds from the sale of real property located at 11310 South Glen Road, Potomac, Maryland, and more fully described as:

        Lot numbered Seven (7) in the Subdivision known as "the Glen" as per plat recorded in Plat Book 104 at Plat 11943 among the land records of Montgomery County, Maryland.

        And being part of property conveyed to William Smyth by deed dated August 31, 1992, and recorded September 4, 1992, in Liber 10631

at Folio 90 among the aforesaid Land Records;

(b)    <u>Funds</u>

(i)  Eight hundred nineteen thousand one hundred twenty-seven dollars and seventy cents ($819,127.70) in United States funds (as seized From Suntrust Account No. 14431039776 on July 23, 2004);

(ii)  Ninety-nine thousand two hundred sixty-five dollars and twenty-one cents ($99,265.21) in United States funds (as seized from Suntrust Account No. 700265279 on August 13, 2004);

(iii)  Seventy-six thousand eight hundred fifty-three dollars and ninety-six cents ($76,853.96) in United States funds (as seized from Suntrust Account No. 860237680 on August 13, 2004); and

(c)    <u>Money Judgment</u>

A sum of money equal to the total amount of money constituting, or derived from, proceeds obtained, directly or indirectly, as the result of conspiracy to commit bank fraud and wire fraud, in violation of 18 U.S.C. §§ 371, 1344, and 1343; bank fraud, in violation of 18 U.S.C. § 1344; and/or wire fraud, in violation of 18 U.S.C. § 1343, for which the defendants are jointly and severally liable. Fed.R.Crim.P. 32.2(b)(1).

By virtue of the commission of the felony offenses charged in Counts One through Twelve of this Indictment, any and all interest that the defendant(s) has/have in property constituting, or derived from, proceeds traceable to a violation of conspiracy to commit bank fraud and wire fraud, in violation of Title 18, United States Code, Sections 371, 1344, and 1343; bank fraud, in violation of Title 18, United States Code, Section 1344; and/or wire fraud, in violation of Title18, United States

-23-

Code, Section 1343; is vested in the United States and hereby forfeited to the United States, pursuant

to Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section

981(a)(1)(C), incorporating by reference Title 18, United States Code, Section 1956(c)(7), which

further incorporates by reference Title 18, United States Code, Section 1961(1).

3.  If any of the property described above as being subject to forfeiture pursuant to Title 28,

United States Code, Section 2461(c), and Title 18, United States Code, Section 981(a)(1)(C), as a

result of any act or omission of the defendant(s):

        (a)      cannot be located upon the exercise of due diligence;

        (b)      has been transferred or sold to, or deposited with, a
                    third person;

        (c)      has been placed beyond the jurisdiction of the Court;

        (d)      has been substantially diminished in value; or

        (e)      has been commingled with other property that cannot
                    be subdivided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c),

incorporating by reference Title 21, United States Code, Section 853(p), to seek forfeiture of any

other property of said defendant(s) up to the value of said property listed above as being subject to

forfeiture.

**(Criminal Forfeiture, in violation of Title 18, United States Code, Sections
982(a)(2)(A) and 982(b)(1))**

**FORFEITURE ALLEGATION UNDER 18 U.S.C. § 982(a)(1)**

1.  The violations alleged in Counts Thirteen through Eighteen and Twenty-five through

Twenty-seven of this Indictment are realleged and incorporated by reference herein for the purpose

of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Section 982(a)(1).

2. As a result of the offenses alleged in Counts Thirteen through Eighteen and Twenty-five through Twenty-seven of this Indictment, defendants KARERI and FALL shall forfeit to the United States any property, real or personal, involved in, or traceable to such property involved in money laundering, in violation of Title 18, United States Code, Section 1957; including, but not limited to:

(a)     Proceeds from the sale of real property

Any and all proceeds from the sale of real property located at 11310 South Glen Road, Potomac, Maryland, and more fully described as:

Lot numbered Seven (7) in the Subdivision known as "the Glen" as per plat recorded in Plat Book 104 at Plat 11943 among the land records of Montgomery County, Maryland.

And being part of property conveyed to William Smyth by deed dated August 31, 1992, and recorded September 4, 1992, in Liber 10631 at Folio 90 among the aforesaid Land Records;

(b)     Funds

(i) Eight hundred nineteen thousand one hundred twenty-seven dollars and seventy cents ($819,127.70) in United States funds (as seized From Suntrust Account No. 14431039776 on July 23, 2004);

(ii) Ninety-nine thousand two hundred sixty-five dollars and twenty-one cents ($99,265.21) in United States funds (as seized from Suntrust Account No. 700265279 on August 13, 2004);

(iii) Seventy-six thousand eight hundred fifty-three dollars and ninety-six cents ($76,853.96)

          in United States funds (as seized from Suntrust
          Account No. 860237680 on August 13, 2004); and

(c)      <u>Money Judgment</u>

          A sum of money equal to the total amount of property,
          real or personal, involved in, or traceable to such
          property involved in money laundering, in violation of
          Title 18, United States Code, Section 1957, for which
          the defendants are jointly and severally liable.
          Fed.R.Crim.P. 32.2(b)(1).

By virtue of the commission of the felony offenses charged in Counts Thirteen through Eighteen and

Twenty-five through Twenty-seven of this Indictment, any and all interest that the defendant(s)

has/have in the property involved in, or traceable to, property involved in money laundering is vested

in the United States and hereby forfeited to the United States pursuant to Title 18, United States

Code, Section 982(a)(1).

      3. If any of the property described above as being subject to forfeiture pursuant to Title 18,

United States Code, Section 982(a)(1), as a result of any act or omission of the defendant(s):

(a)      cannot be located upon the exercise of due diligence;

(b)      has been transferred or sold to, or deposited with, a
          third person;

(c)      has been placed beyond the jurisdiction of the Court;

(d)      has been substantially diminished in value; or

(e)      has been commingled with other property that cannot
          be subdivided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b)(1),

-26-

incorporating by reference Title 21, United States Code, Section 853(p), to seek forfeiture of any

other property of said defendant(s) up to the value of said property listed above as being subject to

forfeiture.

**(Criminal Forfeiture, in violation of Title 18, United States Code, Sections 982(a)(1); Title 18, United States Code, Section 982(b)(1))**

A TRUE BILL

FOREPERSON

ATTORNEY FOR THE UNITED STATES IN

AND FOR THE DISTRICT OF COLUMBIA